UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **ROBERT EUGENE CARTNAL, II,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 4:21-CV-00688-NCC |
| ) | |
| **KILOLO KIJAKAZI,**[1] ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Robert Eugene Cartnal, II ("Plaintiff") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 42 U.S.C. §§ 1381, *et seq*. Plaintiff has filed a brief in support of the Complaint (Doc. 18), Defendant has filed a brief in support of the Answer (Doc. 21), and Plaintiff has filed a reply (Doc. 22). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 11).

### I. PROCEDURAL HISTORY

Plaintiff protectively filed his applications for DIB and SSI on October 25, 2018 (Tr. 180-90). Plaintiff was initially denied on April 3, 2019, and he filed a Request for Hearing before an

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi shall be substituted for former Commissioner Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Administrative Law Judge ("ALJ") (Tr. 92-115). After a hearing, by decision dated September 22, 2020, the ALJ found Plaintiff not disabled (Tr. 7-28). On April 9, 2021, the Appeals Council denied Plaintiff's request for review (Tr. 1-6). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II.  DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2023, and that Plaintiff has not engaged in substantial gainful activity ("SGA") since October 1, 2017, the alleged disability onset date (Tr. 12-13). In doing so, the ALJ noted that Plaintiff worked after the alleged onset date but that the work activity did not rise to the level of SGA (Tr. 13). The ALJ found that Plaintiff has the severe impairments of obesity, degenerative disc disease, degenerative joint disease of the hips, learning disability, anxiety disorder, and a mood disorder, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13-14). After careful consideration of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work with the following limitations (Tr. 15). Plaintiff must use a cane to ambulate but can still lift and carry within standard sedentary limits (*id.*). He can never climb ropes, ladders, or scaffolds (*id.*). He can occasionally climb ramps and stairs (*id.*). He can occasionally balance and stoop (*id.*). He can never kneel, crouch, or crawl (*id.*). He can have no exposure to excessive vibration, unprotected heights, or hazardous machinery (*id.*). He is able to learn, remember, and carry out simple, routine tasks (*id.*). He is able to use reason and judgment to make simple, routine work-related decisions (*id.*). He is able to work at an appropriate and consistent pace while performing simple, routine tasks (*id.*). He is able to complete simple, routine tasks in a timely manner (*id.*).

He is able to ignore or avoid distractions while performing simple, routine tasks (*id.*).  He must have only gradual changes in job setting and duties (*id.*).  He is able to sustain an ordinary routine and regular attendance at work while performing simple, routine tasks (*id.*).  He is able to work a full day without needing more than the allotted number or length of rest periods during the day while performing simple, routine tasks (*id.*).  He can have no contact with the general public (*id.*).  He is able to occasionally work close to or with coworkers and supervisors without interrupting or distracting them while performing simple, routine tasks (*id.*).  The ALJ found that Plaintiff is unable to perform any past relevant work but that there are jobs that exist in significant numbers in the national economy Plaintiff can perform, including document preparer, touch up screener, and table worker (Tr. 22-23).  Thus, the ALJ concluded that Plaintiff was not under a disability from October 1, 2017, through the date of the decision (Tr. 23).

### III.  LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. §§ 416.920, 404.1529.  "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled."  *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits.  20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment.  20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ."  *Id*.  "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments

would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id*.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); *see also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at

4

step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV.  DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff raises two issues. First, Plaintiff argues that the ALJ's analysis of Plaintiff's mental RFC was legally erroneous (Doc. 18 at 6-9; Doc. 22 at 2-3). Second, Plaintiff argues that the ALJ's failure to address functional limitations contained in a medical opinion the ALJ found persuasive was legal error (Doc. 18 at 9-10; Doc. 22 at 3-5). The Court addresses each argument as follows and ultimately finds that the ALJ's decision is supported by substantial evidence and should be affirmed.

## A.  Mental RFC

Plaintiff argues that the ALJ's analysis of Plaintiff's mental RFC was legally erroneous in that the ALJ failed to perform the itemized functional assessment required by SSR 96-8p (Doc. 18 at 6-9; Doc. 22 at 2-3).  The Commissioner responds that the RFC fully considers the effect of Plaintiff's mental impairments as required by SSR 96-8p (Doc. 21 at 11-14).  The Court agrees.

The ALJ must follow a special psychiatric review technique (PRT) when evaluating the severity of mental impairments.  C.F.R. §§ 404.1520a, 416.920a; SSR 96-8p, 1996 WL 374184 (July 2, 1996) ("Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims").  The PRT is used at the second and third steps of the sequential evaluation process and requires the ALJ to make specific findings as to the degree of limitation in the "paragraph B" categories of mental functioning.  *Id*.  Here, the ALJ followed the PRT and found that Plaintiff had: moderate difficulties understanding, remembering, or applying information; moderate difficulties interacting with others; moderate difficulties with regard to concentrating, persisting, or maintaining pace; and mild difficulties adapting or managing oneself (Tr. 14).  This was consistent with the opinion of the state agency psychological consultant Linda Skolnick, Psy. D., which the ALJ found persuasive (Tr. 22, 63).

The RFC is the most that an individual can still do despite his physical or mental limitations. 20 C.F.R. §§ 404.1545, 416.945; SSR 96-8p.  It represents a function-by-function assessment based upon all of the relevant evidence in the case record.  *Id*.  Social Security Ruling 96-8p reminds ALJs that "the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process" and that "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires *a more detailed assessment by*

6

*itemizing various functions contained in the broad categories* found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments." SSR 96-8p (emphasis added).

Plaintiff argues that the ALJ committed legal error in failing to perform the itemized functional assessment required by SSR 96-8p (Doc. 18 at 6-9; Doc. 22 at 2-3). Plaintiff argues that the only time an itemized assessment was performed was by Dr. Skolnick and that the ALJ's decision is "void of any comparable analysis" (Doc. 18 at 7). However, Plaintiff confuses Social Security Ruling 96-8p's requirement that the ALJ perform an itemized functional assessment with a requirement that the ALJ show his or her work. "[T]here is a difference between what the ALJ must consider and what the ALJ must explain." *Joseph v. Colvin*, 2013 WL 1788570, at *20 (D. Neb. Apr. 26, 2013) (holding the ALJ did not err in failing to articulate the itemized functional assessment under SSR 96-8p); *see also Depover v. Barnhart*, 349 F.3d 563, 567–68 (8th Cir. 2003) (holding the ALJ did not overlook the possibility that the plaintiff was limited with respect to sitting, standing, or walking when he stated his RFC, but implicitly found the plaintiff was not limited in those functions, even though the ALJ did not articulate a specific finding as to sitting, standing, and walking). Plaintiff cites to *Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) for the proposition that explanation of the itemized functional assessment is required (Doc. 18 at 8). *Chunn* is inapposite. There, the ALJ substituted his lay opinion as to the plaintiff's intellectual functioning without explaining why he rejected the psychologist's opinion or why it should not be relied on. *Chunn*, 397 F.3d at 672.

As a general proposition, the PRT assessment must be consistent with the RFC determination. *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) (per curiam). "[O]ur deferential standard of review precludes us from labeling findings as inconsistent if they can be

7

harmonized." *Id*. Here, the ALJ accounted for findings in the PRT assessment by including limitations in the RFC related to simple, routine tasks and work-related decisions, as well as no contact with the general public and only occasional work close to or with coworkers and supervisors (Tr. 15). Plaintiff points to Dr. Skolnick's opinions that Plaintiff is moderately limited in his ability to: accept instruction and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness (Doc. 18 at 7; Tr. 68). Plaintiff argues that the ALJ should have articulated a comparable analysis and, specifically, that the ALJ should have explained how Dr. Skolnick's opinion that Plaintiff "lacks" the ability to accept instruction and respond appropriately to criticism from supervisors was considered in determining the RFC (Doc. 18 at 7-8). The Court notes that Dr. Skolnick did not opine that Plaintiff "lacks" the ability to accept instruction and respond appropriately to criticism from supervisors, only that Plaintiff is moderately limited in that function (Tr. 68). The ALJ appropriately considered Dr. Skolnick's itemized functional limitations in crafting an RFC that included no contact with the general public and only occasional work close to or with coworkers and supervisors (Tr. 15).

This is not a case where the ALJ made a specific finding in the PRT assessment but then omitted any corresponding limitation in the RFC. *See, e.g., Clevenger v. Colvin*, No. 15-CV-6087-SJ-DGK-SSA, 2016 WL 3911982, at *2 (W.D. Mo. July 15, 2016) (remanding where, despite finding that Plaintiff's social functioning was moderately impaired and noting that those deficiencies support additional restrictions, the ALJ's mental RFC formulation had no restrictions on social interactions). The Court finds that the ALJ's RFC determination is sufficiently consistent with the PRT assessment and that the ALJ did not err in failing to articulate an

8

itemized functional assessment.  *Chismarich*, 888 F.3d at 980; *Depover*, 349 F.3d at 567–68; *Joseph*, 2013 WL 1788570 at *20 (holding the ALJ did not err by failing to perform a "function-by-function" analysis of the RFC where the ALJ's opinion showed the ALJ understood the requirements of SSR 96–8p, carefully considered all of the limitations suggested by the plaintiff and his treatment providers, and incorporated those that the ALJ found credible into the RFC).

To the extent Plaintiff argues generally that the ALJ's decision fails to build an accurate and logical bridge between the evidence and the mental RFC, the Court disagrees.  In reviewing the medical record to determine the RFC, the ALJ noted that Plaintiff's primary care physician Dr. Allison Flammang, M.D., diagnosed him with major depressive disorder under fair control in February 2018 and that, in March 2018, Plaintiff presented to Dr. Flammang with an appropriate mood and affect, normal insight, normal memory, and normal judgment (Tr. 18, 501, 505).  The ALJ further noted that, in December 2019, Plaintiff reported to his subsequent primary care physician Dr. Linda Swartwout, M.D., that the medication Cymbalta was helping with his mood (Tr. 17, 696-98).  As noted by the ALJ, Dr. Swartwout declined to complete disability paperwork for Plaintiff in part because he had only started treatment for depression the month prior (Tr. 17, 696).

In April 2020, Plaintiff had an initial evaluation with psychiatrist John Paruch, M.D., and in June 2020, he had a return visit, as noted by the ALJ (Tr. 19, 725-53).  Dr. Paruch diagnosed Plaintiff with persistent depressive disorder and generalized anxiety disorder, and started Plaintiff on Wellbutrin, as noted by the ALJ (Tr. 19, 733-34).  By his return visit, Plaintiff had lost weight per medical directive; his sleep, appetite, concentration, and energy level were normal, and his mood was euthymic; he was negative for agitation, behavioral problems, confusion, and decreased concentration, and was not hyperactive; and his physical exam showed

9

normal appearance, attention, perception, mood, affect, speech, behavior, thought content, cognition, memory, and judgment (Tr. 727-29). He was alert and oriented to person, place, and time, and attentive and cooperative (Tr. 729). The ALJ noted that, in his return visit, Plaintiff reported normal sleep, normal concentration and energy level and that his mental status examination showed no abnormalities and was within normal limits (Tr. 19). The ALJ further noted that, as of June 13, 2020, Dr. Swartwout reported that Plaintiff's depression had improved and he was doing better on the combination of Cymbalta and Wellbutrin (Tr. 19, 713-16). The ALJ concluded that Plaintiff had some mental health symptoms that would require some limitations, but noted that Plaintiff had sought minimal mental health treatment prior to April 2020 and that, with medications and treatment, Plaintiff was able to see some improvement (Tr. 19).

The ALJ reviewed and found persuasive the opinion of nurse practitioner Cynthia Hays, PMHNP-BC, MSN, who conducted a psychological consultative examination of Plaintiff on March 5, 2019 (Tr. 18, 654-58). In addition, the ALJ reviewed and found persuasive the opinion of Dr. Skolnick who evaluated Plaintiff on March 29, 2019 (Tr. 22, 56-71). With the exception of Plaintiff's second point, discussed and denied below, Plaintiff does not take issue with the ALJ's evaluation of the opinion evidence in this case. The ALJ adopted the paragraph B limitations contained in nurse Hays' and Dr. Skolnick's opinions and cited to specific evidence in the record within each broad category (Tr. 19-20, 63, 656-57). The Court finds no error in the ALJ's explanation of the RFC determination.

B. **Failure to Address Functional Limitations in Medical Opinion**

In his second point, Plaintiff argues that the ALJ's failure to address functional limitations contained in a medical opinion the ALJ found persuasive was legal error (Doc. 18 at

10

9-10; Doc. 22 at 3-5).  Specifically, Plaintiff argues that it was legal error for the ALJ to include an RFC limitation of occasional work close to or with coworkers and supervisors when the ALJ found Dr. Skolnick's opinion persuasive and Dr. Skolnick opined that Plaintiff can interact socially in a setting that does not involve close or frequent contact with coworkers and supervisors (*id.*).  Plaintiff is splitting hairs.  Dr. Skolnick opined that Plaintiff "can interact socially in a setting that does not involve close or frequent contact with the general public, coworkers, and supervisors" (Tr. 68).  The ALJ honored the spirit of this opinion, limiting the frequency of contact with coworkers and supervisors to "occasionally" and arguably going beyond the opinion to entirely prohibit contact with the general public (Tr. 15).  Although it is technically true that the ALJ allowed occasional "work close to" coworkers and supervisors (Tr. 15) while Dr. Skolnick opined Plaintiff could have no "close … contact with" coworkers and supervisors (Tr. 68), the ALJ's failure to address such a minimal discrepancy is not grounds for reversal.

  The cases cited by Plaintiff are inapposite (Doc. 22 at 4-5).  For example, in *Murphy v. Colvin*, the ALJ accepted and gave weight to the state agency psychological consultant's medical opinion, but nonetheless failed to mention or address the consultant's opinions regarding the plaintiff's dysthymia, anxiety disorder and impaired judgment, and interactions with the general public.  No. 1:15-CV-00131-AGF, 2016 WL 4158868, at *5, *7 (E.D. Mo. Aug. 5, 2016).  The court found that the ALJ erred in rejecting "significant portions" of the consultant's medical opinion, which had support in the record, without giving any reasons.  *Id.* at *7-8.  Here, Plaintiff had to closely parse one opinion of many given by Dr. Skolnick to find any arguable partial discrepancy that disfavored Plaintiff.  The Court finds that the ALJ did not err in evaluating Dr. Skolnick's medical opinion.

11

## V.  CONCLUSION

For the foregoing reasons, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED, with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 21st day of September, 2022.

                                                       /s/ Noelle C. Collins  
                                                      NOELLE C. COLLINS  
                                                      UNITED STATES MAGISTRATE JUDGE